IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HER IMPORTS ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 1:22-cv-3243 |
| ) | |
| CABELLO REAL, LTD ) | |
| incorporated in the United Arab ) | |
| Emirates, CABELLO REAL FZE, ) | |
| incorporated in the United Arab ) | |
| Emirates, JOHN DOES 1-10 and Roe ) | |
| Corporations 1-10. ) | |
| ) | |
| Defendants. ) | |

## **COMPLAINT**

Plaintiff, Her Imports (hereinafter "Plaintiff" or "Her Imports") by their attorney, brings this civil action to recover $753,772 in losses wrongfully spent by the Defendants, Cabello Real, Ltd, Cabello FZE, John Does 1-10 and Roe Corporations 1-10 (hereinafter "Defendants") for expenses paid on their behalf by the Plaintiff, and alleges the following based on personal knowledge, information and belief:

### INTRODUCTION

1. Over the course of a year, the Plaintiff advanced the Defendants $753,772. The Defendants, who are major common shareholders of Her Imports, directed the Plaintiff to use Her Imports funds to pay $753,772 of expenses on behalf of the Defendants. Since these payments were used for matters unrelated to Her Impors, at the expense of Her Imports and its shareholders, the management of Her Imports asked the Defendants to return the monies advanced, but to no avail. The Plaintiff is seeking reimbursement of the $753,772, based on the claims of: a) unjust enrichment; b) breach of fiduciary duty; and c) in the alternative to unjust enrichment, conversion.

## THE PARTIES

2. Plaintiff, Her Imports is a Nevada corporation. For the past three years, Her Imports has maintained offices and a retail store located at 564 W. Randolph Street, 2nd Floor, Chicago, IL 60661.

3. Defendant Cabello Real, Ltd., is a United Arab Emirate Company, located at Level 23 Boulevard Plaza Tower 2, Emaar Boulevard, Dubai, United Arab Emirates. Cabello Real, Ltd. owns 1,272,696 (13.5%) common shares of Her Imports. Her Imports has 9,437,135 common shares issued and outstanding. Cabello Real, Ltd. is indirectly controlled by Patrick Johnathan William Terry, a Canadian citizen, who is a resident of the United Arab Emirates, who is currently living in Mexico.

4. Defendant Cabello Real FZE, is a United Arab Emirate Company, located at Business Center, Al Shmookh Building, UAQ Free Trade Zone, Umm Al Quawain, United Arab Emirates. Cabello Real FZE owns 4,750,000 (50.3%) common shares of Her Imports. Her Imports has 9,437,135 common shares issued and outstanding. Cabello Real FZE is indirectly controlled by Patrick Johnathan William Terry, a Canadian citizen, who is a resident of the United Arab Emirates, who is currently living in Mexico.

5. Additionally, the Cabello units collectively own 5,000,000 shares of non-voting, non-cumulative, callable preferred stock, which pays a dividend at the discretion of Her Import's Board of Directors.

6. The individuals and entities referred to in the three preceding paragraphs are referred to collectively as "Defendants."

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because Plaintiff is a citizen of a state different from any of the Defendants.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that Defendant, Her Imports conducts business in Cook County Illinois and is subject to personal jurisdiction in this District.

## SUBSTANTIVE ALLEGATIONS

**A. Corporate History**

9. The Plaintiff, Her Imports, (no Inc.), a corporation, operates a business that globally sources, markets and sells human hair as hair extensions and related haircare and beauty products.

10. Its predecessor, Her Imports, LLC, a private limited liability company was originally formed and operated by Patrick Johnathan William Terry (hereinafter "Mr. Terry").

11. In September, 2017, the limited liability company assigned certain in return for royalties with a fully reporting publicly traded company, named EZJR, Inc, which subsequently changed its name to Her Imports.

12. Subsquently, the royalties were reduced in exchange for issuance of common stock to the Defendants.

13. In exchange for the Defendant assigning the trade name "Her Imports" to the Plaintiff, the Plaintiff issued additional common stock to the Defendant.

14. The trademark was never transferred to the Plaintiff and subsequently, the Plaintiff learned that the Defendant did not own the trademark.

15. Upon the transfer of stock, the Cabello entities took controlling ownership of Her Imports.

16. Mr. Terry, through his Cabello entities, continued help Her Imports operate their core hair extension business.

**B. Her Imports Financial Reporting and Trading Status**

17. On January 30, 2019, Her Imports purposedly terminated its registration with the U.S. Securities and Exchange Commission, in order to reduce the costs of being fully reporting.

18. Her Imports remains a non-reporting publicly traded company, quoted on the Expert Markets, under the stock trading symbol: HHER.

19. Her Imports has approximately 200 shareholders.

20. Cabello received 5,000,000 non-voting, non-cumulative, callable preferred stock, which when approved by a Board vote, paid a monthly dividend of $60,000 per month, as payment for utilizing the Her Import trademark. The Cabello received $2,100,000 in dividends, from October 2, 2017 through November 8, 2019.

21. When Her Imports learned that neither Mr. Terry nor Cabello owned the trademark, dividend payments were stopped.

**C. Deterioration of Business Relationship**

22. At the beginning of Her Imports, Mr. Terry made positive contributions to help Her Imports succeed.

23. These positive contributions started to break down, when Mr. Terry wanted to open a South American subsidiary.

24. Mr. Terry started asking the Plaintiff to pay bills, and pay special bonuses under the pretense that he was helping build the business for Her Imports. The requests continued to increase, and based on the past working relationship, Her Imports accommodated these requests.

25. Her Imports became suspicious of Mr. Terry's activities, when management learned that some inventory was missing.

26. Under and information and belief, management believed Mr. Terry was self-dealing at the expense of Her Imports.

27. What ended the apprehensiveness, is when Her Import received an invoice for $15,000 in excess of their normal UPS bills. This was approximately double their standard UPS billing.

28. The management of Her Imports confronted Mr. Terry and asked him to pay back the misdirected funds, to no avail.

29. While these misdirected transactions took place, Mr. Terry took control of Her Imports website, URL and Instragram account.

**D. Misappropriation of Funds**

30. Over approximately a two-year period, $753,772 was advanced to pay personal expenses of the Defendants.

31. The records will demonstrate that Mr. Terry directed Her Imports to pay rents, mortgage payments, travel, and other personal payments, paid directly to the Defendants' third party designees.

32. When Her Imports learned that these were non-business expenses, Her Imports stopped further payments and directed the reimbursement of these funds from the Defendants to no avail.

33. In order to protect the Defendants from taking control of the Her Imports, at the further expense of the shareholders, the Plaintiff, in consideration for salaries owed, issued 10,000,000 voting preferred shares, which shifted control to two officers/directors of Her Imports, to prevent further financial damage by the Defendants.

34. In order to confirm who had control of Her Imports, a Court Case was adjudicated in the District Court of Nevada, Clark County, Case No.: A-19-806635-C, captioned, Her Imports v. Terry, Cabello Real, Ltd, and Cabello FZE where the Court ratified that issuance of the voting preferred shares, that gave management, not Mr. Terry or the Cabello entities control of Her Imports.

## COUNT I
## UNJUST ENRICHMENT
### (As Against All Defendants)

35. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

36. Unjust enrichment, or restitution, may be alleged where a defendant unjustly obtains and retains a benefit to the plaintiff's detriment, and where such retention violates fundamental principles of equity, justice, and good conscience.

37. The Defendants directed the Plaintiff to pay bills and expenses on behalf of the Defendants, telling the Plaintiff that the Plaintiff would be fully reimbursed.

38. The funds transferred legally belong to the Plaintiff.

39. Over the course of approximately year, ending in January, 2019, the Plaintiff transferred $753,722 to pay bills and expenses of the Defendants, with no benefit to Her Imports.

40. The Plaintiff has itemized receipts of all payments made on behalf of the Defendants.

41. The funds are identifiable, and there is a direct chain from the Plaintiffs of the

payments to the current person(s)/entities in possession of the money.

42. On information and belief, the Defendants and/or their designees retained the funds transferred by the Plaintiff. Specifically, these funds were transferred to the Defendants for their personal use.

43. On information and belief, funds transferred by the Plaintiff to the Defendants legally belong to the Plaintiff and are due and owing to the Plaintiff. Defendants owe a fiduciary duty as the largest common shareholders of the Plaintiff.

44. On information and belief, the Defendants breached their fiduciary duties to the Plaintiff by causing, permitting, facilitating or otherwise allowing the Plaintiff's money to be distributed to third parties at the expense of the Plaintiff for the personal benefit of the Defendants.

45. Under principles of equity and good conscience, Defendants should not be permitted to retain any of the funds transferred from the Plaintiff to the Defendants.

46. In summary, the Defendants were: (1) enriched by directing the Plaintiff to send the Plaintiff's funds to a third parties, (2) as a result, the Plaintiff was impoverished of the funds, and (3) there was a relation between the enrichment, whereby the Defendants are the major common shareholders of the Plaintiff. The Defendants should not be permitted, in equity and good conscience, to retain for themselves the $753,772, that rightfully belongs to Plaintiff.

47. By reason of the foregoing, Plaintiff has been injured in an amount of $753,772, plus interest, for which sum the Defendants are liable to the Plaintiff.

48. The Defendants unjust enrichment actions caused immeasurable financial damage to the Plaintiff.

49. The value to the Company was further damaged, when the company's website, URL and Instagram account were unlawfully held, due to the fact that Mr. Terry was managing

the site for the Company and he purposely did not turn over the administrative codes.

## COUNT II
### Breach of Fiduciary Duty
### (As Against All Defendants)

50. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

51. As the major common shareholders of the Plaintiff, the Defendants owe fiduciary duties of care, loyalty and good faith to Her Import's other stockholders, including Her Imports itself.

52. Defendants' fiduciary duties include obligations to exercise good business judgment, to act prudently in the operation of the Plaintiff's business, to discharge their action in good faith, to act in the best interests of Her Imports and its stockholders, and to put the interest of the Her Imports before their own.

53. Defendants breached their fiduciary duty of care by siphoning $753,772 from the Her Imports, at the financial expense of the Plaintiff and diminishing shareholder value.

54. . The Defendants engaged in self-dealing, and did not act in good faith toward the Plaintiff this resulted in breach fiduciary duties by the Defendants to the Her Imports and its shareholders.

55. Defendants breached their fiduciary duty of loyalty and good faith by, among other thigs, intentionally violating securities laws by taking monies from Her Imports, without reimbursing Her Imports at the expense of the Plaintiff's shareholders.

56. Plaintiff and the other Her Imports stockholders have been damaged by the Defendants' breach of their fiduciary duties.

57. Plaintiff and the shareholders of Her Imports have been irreparably injured as a direct and proximate result of the aforementioned acts.

58. In summary, the elements of a breach of fiduciary duty have been met, in that: (a) a fiduciary duty existed; and (b) that the Defendants breached that duty.

## COUNT III
## CONVERSION
### (As Against All Defendants)
### (*In the Alternative to Count I*)

59. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein, excluding paragraphs 32 through 44.

60. The conversion consists of $753,772 of monies paid by the Plaintiff on behalf of the Defendants, which consists of rents, mortgage payment, travel, and personal payments, paid to the Defendants third party designees.

61. This money was transferred for the benefit of the Defendants.

62. Prior to filing any lawsuit, Plaintiff made multiple attempts demanding Defendants, return the monies paid on their behalf.

63. Plaintiff, was deprived of $753,772 paid for monies paid on behalf of the Defendants.

64. Defendants had full control and dominion of the funds of the conversion.

65. Defendants have wrongfully and without authorization assumed control and ownership over the misdirected $753,772 and refused to return these funds to the Plaintiff.

66. Plaintiff's cause of action meets all of the elements for conversion:

a. Plaintiff has a right that their monies be returned by the Defendants.

b. Defendants as major shareholders of the Plaintiff had dominion and ownership over the monies paid on their behalf, and wrongfully refused to return the $753,772 to the Plaintiff.

c. Plaintiff, on multiple occasions, demanded an immediate return/ possession of the monies paid on behalf of the Defendants, to no avail.

67. It was the failure of Defendants, to pay the $753,772 advanced to the Defendants, that Plaintiff filed his lawsuit.

68. It was Defendants wrongful control and deprivation that unlawfully withheld the $753,772 paid by the Plaintiff for the benefit of the Defendants.

69. All demand attempts to recover the monies from Defendants were futile.

70. Based on information and belief, the Defendants siphoned $753,772 from Plaintiff to make personal payments at the expenses of the Plaintiff and its shareholders.

71. As a direct, foreseeable, and proximate result of the conversion of the Plaintiff and the Plaintiff's shareholders have been damaged.

## COUNT IV
### (Costs, Expenses, And Attorneys' Fees—Against The Defendants)

72. Plaintiff repeats and realleges the allegations contained in all prior paragraphs as if set forth fully herein.

73. As alleged hereinabove, this action is necessitated by the Defendants false inducements and willful and uncured breaches to return the monies advanced.

74. By reason of the foregoing, Plaintiff is entitled to reimbursement from the Defendants for all costs, expenses, and attorneys' fees (with interest thereon) incurred by Plaintiff in commencing and prosecuting this action, in an amount to be determined at trial.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Her Imports respectfully requests that this Court enter judgment in its favor and enter an order:

A. Finding that the Defendants were unjustly enriched.

B. In the alternative to unjust enrichment, enter a judgment that the Defendants conduct constitutes conversion.

C.  The Court adjudge and decree that Defendants' conduct herein constituted a breach of fiduciary duty to the Plaintiff;

D.  The Court adjudge and decree a finding in favor of the Plaintiff for the amount of damages sustained by Her Imports as a result of the Defendants' breaches of fiduciary duties.

E.  In the alternative, based on the foregoing transactions, since the Defendants are foreign entities and if they fail to pay the damages in 45-days, the Court orders the Plaintiff's transfer agent to cancel the Defendants share ownership of Her Imports to the amount of the monies owed, which would includes any and all shares issued to the Cabello entities.

F.  Finding extraordinary equitable relief as permitted by law, equity, and the statutory provisions sued hereunder;

G.  Awarding Plaintiff its costs and expenses in this litigation, including reasonable attorneys' fees and consultants' fees and expenses, and, if applicable, pre-judgment and post-judgment interest and awarding such other and further relief as the Court deems equitable and just.

Dated: June 21, 2022　　　　　　　　　　　　Respectfully submitted,

/s/ T. J. Jesky
T. J. Jesky
Law Offices of T. J. Jesky
205 N. Michigan Ave., Suite 810
Chicago, IL 60601-5902
Telephone: (312) 894-0130
Facsimile: (312) 489-8216
Email: tj@jeskylaw.com
*Attorney for Plaintiff*